Good morning, Your Honors. Good morning. Konstantinos Funtas for the petitioner, Mr. Shima. There are two major issues on why the immigration judge erred, the one being that he made a finding that Mr. Shima firmly resettled in Greece, and the second that he made an adverse credibility determination. Counsel, if we agree that the petitioner had firmly resettled, we don't have to get to the adverse credibility issue. Is that correct? I believe so, but that's in dispute as well. I understand. So for the settlement in Greece, there's no dispute that he did become a permanent resident in Greece around 2009, and in 2011 he left Greece. The claim for persecution in Albania happened around 2013, which was two years after he left Greece. Counsel, may I ask you, the fact that he left Greece, does that undo the fact that he was given permanent status there? Yes, I would argue that because his claim for persecution happened after he lost his residence in Greece, and he did testify that he did lose it. It's similar to our system where a permanent resident leaves the country. For more than one year, he presumptively has abandoned his status. There's a similar rule in Greece as per the testimony of Mr. Shima. There's also another requirement where he had to work 150 days in Greece per year to maintain his status, and being out of the country for two years, he lost that. Counsel, before we leave that point, do you have a case citation that would support the proposition that if an individual voluntarily gives up his permanent status, that undoes the firm resettlement in that country? I did try to find the laws in Greece. It was very difficult. No, but I mean, is there a case in our immigration jurisprudence that answers that question? I haven't found anything in our jurisprudence, no. We did try to present a document for judicial recognition of Greek law that was rejected by this court. It happened just recently. I couldn't find the rule earlier than just recently. There was no way for us to know, in fact, that that document was what it purported to be. There were no aspersions on the origin of the document, but we just couldn't tell from the document whether or not it was what it purported to be. And that's the difficulty in getting law from Greece, and I did try my due diligence. I do recommend remanding to the immigration court to make that first finding to see if he can rely on that Greek law, whether Mr. Shima did have firm resettlement or not. That should be the appropriate remedy in order for the IJ to make that finding of fact. Is that a matter of Greek law? I'm sorry? I'm sorry. Is your argument that that's a matter of Greek law? Yes, it should be remanded for the IJ to make the finding of fact whether Mr. Shima's testimony corroborates the law that, in fact, that we did present to this court, even though it was late to this court. The petitioner also did testify he cannot go back to Greece or even renew his permanent residence status after being out of the country for two years. It's less a question, though, legally, as to whether, in fact, he could go back. It's more a question as to whether he, in fact, was offered permanent visa status. And he has been offered permanent visa status up until July 1st or the end of June of 2018. Doesn't that essentially answer the question? That is, in fact, he has been offered, for the purposes of immigration jurisprudence, he's been offered permanent resident status. Yes, that's correct. But the distinguishment is that he was offered and lost it prior to his claim of persecution. Well, of course, I'm not so sure he has lost it. Didn't he, in fact, use his card, his permanent visa status card, to get back into Greece? That's also in dispute. The testimony was a little shaky on that. On the transcript on page 85, he does state he cannot testify to that specifically. He did use his Albanian passport that had the Greek visa in it, but he didn't state that the reason he was allowed in Greece was because he had a Greek visa. Albanians are allowed to enter Greece up to 90 days to travel for personal and for business purposes back and forth. So presenting an Albanian passport with a visa that could have been expired is not necessarily conclusive that he used his permanent resident visa to enter Greece. But he did, in fact, show his permanent resident visa as he entered Greece. And you're just not sure as to whether or not the agent used that as the basis to permit him to enter? Well, he presented his passport right. I have no idea if the agent saw that page and admitted him under that status or just saw that he was an Albanian citizen and admitted him as a tourist up to 90 days. It's not clear on the record. Was it an Albanian passport? Correct, yes. There is also a case law in this court in Souache that states that even naturalization in a different country didn't exactly establish firm resettlement. And in this case, there is no naturalization in Greece. It's permanent resident status that the petitioner claims to have lost. And that's where the adverse credibility determination also comes in. The IJ relied on information or made conclusions that were not really supported by the record. He stated that Mr. Shima had a preconceived intention to travel to the U.S. to claim asylum. That's really not relevant. That was one of his basis for his denials. He also stated that his brother, who was in the court, did not testify on his behalf, which is also not relevant. His brother was not in Albania at the time. He wouldn't have first-hand knowledge on the persecution. And his brother had been living in the United States for many years prior, so there was really no reason for his brother to testify on his behalf, as everything would be hearsay. Also, the IJ stated that the person that Mr. Shima was in fear of was a man named Sokol Diako. He says that there was no evidence that this person even existed. However, we did provide evidence that he existed, and that's in the administrative record from page 259 to 261. Just going further with Diako, is that how you pronounce his name? I'm not sure how you pronounce it, but Diako. Regardless. So, obviously a private citizen. Where's the political connection here? He is a local person who is—I'm not sure what his title is, but he is part of the Democratic Party, and he wanted Mr. Shima to buy votes for the local elections at the time. And Mr. Shima was a member of the Socialist Party, and that's where the political opinion comes in. So what you're suggesting is that the threat to Mr. Shima was because of the vote-buying scheme? Or was it, in fact, because Mr. Shima had given Mr. Diako money and never got the goods? Yes, he offered him money to secure a visa to come to this country, and he never received that, yes. But you're basically saying the threat was because he refused to comply with a vote-buying scheme? Yes, that's when the threats to him and his family occurred. He was seen with his son at a socialist rally by Mr. Diako or his so-called henchmen, and that's where the political opinion comes in. Even though he was a private citizen, he claims that he is connected to the local police, and the government would be unable or unwilling to help him. But then he relies upon that assault, that theoretical assault, where this friend of Mr. Diako or his friends of Diako come and say, you want the money back or do you want to die? That was essentially the threat. Now, I thought Mr. Shima was relying upon that threat, which stemmed out of the relationship with Mr. Diako and buying his false documents. But what you're suggesting now is that that is not relevant, but really it's a vote-buying scheme? Oh, no, it's very relevant. That was the initial threat, and Mr. Shima did ask for his money, and that's when he received an initial threat. But the central claim was when these people saw him with his son at a rally, at a socialist rally, that's when the persecution escalated and it became a political opinion situation. Counsel, do you agree that our standard of review is for substantial evidence? Yes. So even if there are two alternative explanations, unless we are compelled to one view or the other, we have to uphold the decision of the board. Do you agree with that? I understand. Yes, correct, Your Honor. All right, thank you. You've exceeded your time. We'll give you one minute for rebuttal. Thank you. Morning, Your Honors. Brenton Lucas for the United States. This Court should deny the petition for review. Petitioner has yet to provide any compelling basis for setting aside the agency's findings that he had firmly resettled in Greece and that he lacked credibility. I'd like to take each issue in turn. To start, Petitioner has yet to show why any reasonable adjudicator under the substantial evidence standard would be compelled to find that he had not firmly resettled in Greece. Now, the contours of this dispute are pretty clear. Right now, in the record, there was direct evidence that Petitioner had indeed received an offer of permanent resettlement in Greece in the form of a Greek permanent residence card. So now the burden shifts to Petitioner to rebut that evidence. He failed to do so below. At most, he claimed that his permanent residence in Greece had expired because he was out of the country and failed to work there for 150 days each year. But Petitioner never actually provided any documentary evidence supporting this. It was simply his testimony. And on substantial evidence review, the immigration judge and then the Board of Immigration Appeals was entitled to conclude that this did not overcome the clear import of that permanent residence document. Counsel, what's your response to opposing counsel's suggestion that we should not amend this matter for the board to remand to the I.J. to consider the evidence of Greek law? Your Honor, we don't think that would be appropriate under the substantial evidence standard, because we think in this context, the immigration judge and the BIA was faced with two explanations at best, and we think they equally could have and reasonably could have concluded that Petitioner had failed to rebut this evidence that he was a permanent residence. And it's not just the permanent residence card that was entered into evidence. Petitioner did testify in the hearings that he was a permanent resident of Greece and that he used this card to enter Greece in 2014. So we think there was more than enough evidence for the immigration judge and the board to conclude that he was, in fact, a permanent resident of Greece and that he had failed to rebut it. Is that the status of the evidence that he, in fact, testified that he used the permanent resident visa to get into Greece in 2014, because obviously the opposing counsel suggests that he gave the Albanian passport, which included the permanent resident visa, but that was not necessarily relied upon by Greek authorities to allow him in? You're correct, Your Honor, that there is a dispute. We think the record is pretty clear on this point, though. You can look at pages 169 to 172, I think, are the key pages for this, for your purposes here. And he did testify that he used his permanent resident status to enter into the country. Now, when he appealed from the immigration judge to the Board of Immigration Appeals, for the first time he made this new argument saying that, oh, well, Albanian citizens can come in to Greece using their Albanian passports. But that was — and he attached, I believe it was a plane ticket with some language showing that one could do this, a sort of generic plane ticket. But as the BIA explained, this argument was never presented to the immigration judge, and we think this novel argument doesn't carry the weight, especially in the face of Petitioner's testimony to the immigration judge. But you agree that if he couldn't — can't get back — couldn't get back into Greece, that he's — he's not — you can't say that he's permanently resettled. Is that correct? Yes, Your Honor. But in this context, we think that the evidence is pretty clear, and at a minimum under the substantial evidence review, we think it should be affirmed. I mean, basically what you had in front of the agency was a piece of evidence showing that he had permanent resident status in Greece until 2018, and then testimony from him that he used these papers to get into Greece in 2014. And in addition to that, Your Honors, I'd also point you to a spot in the record where he was returning into Italy — or going to Italy from Albania in late 2013. And at that point, he said that, oh, at that time, I used my Greek papers to get into Italy, and he said those papers were good at the time. That testimony conflicts with his explanation now that he would have lost that after 150 days, and that's at page 121 of the administrative record. And so we think, given all this context, that this Court should deny the petition, especially under the substantial evidence standard. Was he represented in the hearing before the IJ? Yes, Your Honor. And when he first was interviewed by Immigration, did he not say that his address was, in fact, Greece? Yes, Your Honor, he did. He gave that as his permanent address. I believe it was the same city listed on his Greek permanent residence card, Larissa, if I remember correctly. Yes. And he told that to the Immigration — to the Customs and Border Patrol, and that's written up in the report. So one of the questions I have about lack of credibility is the use by the IJ of the wife going back to Albania. Is it true that, in fact, when they split up and he stayed and requested asylum, that she voluntarily returned to Europe and then ultimately back to Albania? Your Honor, two points of clarification on the wife's status. First, I just want to urge you that the Board of Immigration Appeals did not rely on this particular factor in affirming the immigration judge's adverse credibility findings. It relied on two others. So we don't think that's really an appropriate basis to assess at this point. But setting that aside, the wife — the immigration judge's point, as far as we understand it, is the reason why the wife's return to Europe was relevant was that she could have applied for asylum, like her husband did, and evidently chose not to because she returned. And so I believe the IJ's reasoning was that, had there actually been a significant threat to the Petitioner and his family, the wife would have sought asylum as well. I think that's the extent of it. But in any event, as I explained before, we don't find that particularly relevant in this case. But on the credibility issue, Your Honor, we do believe that in this context, especially on substantial evidence review, this Court should deny the petition on the basis of the challenge to the Board's credibility finding. The Board gave two reasons for affirming the immigration judge's adverse credibility finding, and we think both make sense and especially withstand substantial evidence review. The first is that Petitioner, despite his claims of threatened — being threatened by a man named Sokol Daiko, returned to Albania three times after he had fled there to Italy in 2013. Now, he claims that he did so to secure his children's safety, but we think there are two problems with that explanation, Your Honors. And the first is he made three return trips to Albania, but the record shows that only on the third did he actually return to take his children there and secure their safety, and we're not quite sure what he did on the preceding two trips. And so that undercuts any sort of explanation that he had a compelling basis to return. And so even if we set that final trip aside, we still think this undermines his credible — his credibility with respect to his fear of returning — that he was being actually hunted by Daiko. And even if all the trips were to secure his children's safety, it still undercuts his narrative or the credibility of his narrative that Daiko could find him and hunt him throughout Europe if he was willing to take his children and place them in the country where Daiko would concede they had the most access to his family. Moving on from that point — Ginsburg-McCarthy, counsel, do we need to reach the adverse credibility determination if we determine he was firmly resettled? You Honor, the firm resettlement point goes to his asylum application. And so I think you do need to touch on credibility to address the — Withholding. Withholding and convention against torture claims. But anyway, on the asylum point — or excuse me, on the withholding of removal and credibility, the other point that the board gave, and I think it's instructive, is it recognized, look, Petitioner remained in Europe after fleeing Albania to Italy for almost a year, and during that time, he traveled to five different countries and he didn't apply to asylum in any of them. And when he was asked why he didn't apply to asylum in any of these countries, he said it was, well, because Daiko was going to hunt him and track him down through Europe. And the immigration judge pushed him on this and tried to get an explanation exactly why Daiko would do this, given that Daiko owed Petitioner 15,000 euros, not vice versa. And as the immigration judge pointed out, Petitioner really didn't have a compelling basis for why Daiko would scour the European continent to hunt him. And so based on this implausible testimony, the immigration judge and the board in turn found that Petitioner's credibility was in question. And — Well, the Petitioner first relied upon the relationship with Daiko stemming out of his attempted fraudulent materials. But then the argument seemed to shift to a political question, because you have to show the political connection, the political opinion in regard to asylum. And to what extent is there any evidence to suggest that Daiko is in some way exercising his threats arising out of some political position or opinion? Your Honor, there's competing testimony and explanations from Petitioner on this. At first, he starts with the explanation would be that Daiko was going to — or was hunting him because he inquired about the money and was concerned about this. Later, he goes on and says, oh, it's because — he points to the fact that Daiko's men saw him at a rally for the opposing political party. I think the instructive point, for Your Honor, on this is when the immigration judge did ask Petitioner for whether — excuse me, I see I'm out of time, may I have leave to answer the question — when asked why Daiko would hunt him throughout his country, he did not give any sort of political reason for it. He said, oh, he thinks that, you know, perhaps Daiko will just hunt him because Daiko's afraid of getting caught and wants to, you know, keep him quiet or something along those lines. So once again, it was tied to the money rather than any sort of political origin. So thank you. So if Your Honors have no further — I do have a question. Go ahead. If my colleagues will — Absolutely. — oblige me. On the asylum, I'm not quite sure I understand. He had — his testimony was that he can't get back into Greece because he's been outside too long. And the adverse credibility doesn't go to that, does it? I'm just — I'm not quite understanding why, again, your answer to why we don't have to remand to consider — why we couldn't remand to consider whether he can get back in. Oh, Your Honor, we — with respect to the firm resettlement point, we don't think you should remand because on substantial evidence review, we think that there was more than enough to uphold the finding that he lacked — or that he had from the — On the face of the document? On the face of the document and his testimony and his failure to rebut that. We would point to all of the things in the record. Went back. Okay. Counsel, may I ask you, did the agency make a finding regarding Nexus? No, Your Honor. The immigration judge did, but the agency did not. So we would ask you not to rule on that particular issue. On what? Nexus. Oh, Nexus. All right. Thank you, Counsel. Thank you, Your Honor. Rebuttal. Thank you, Your Honor. The major issue is with this firm resettlement. The consequences are very severe. If Mr. Shima is to return and face persecution or even be killed, it is reasonable to ask this Court to remand the case for the I.J. to at least see the Greek law. And if it corroborates Mr. Shima's testimony, that would basically negate the adverse credibility determination, and then the I.J. could make a proper finding. Counsel, the difficulty is there appears to be substantial evidence in the record already to support the determination that he was firmly resettled, based on his testimony that he could use the Greek document to go in and out of the country, and that he, in fact, used it. Again, on the transcript, on the subsequent page 85 on the transcript, he did say he cannot make that testimony. Even though he says on page 84 that he used the document to come back and forth upon further inquiry, he did conclude he cannot make that testimony. He did have an interpreter. There was issues with the first interpreter. The second one was better. His testimony was practically the same both times. And he was detained. He was in chains. It's a very intimidating situation for him. I wouldn't use that specific point to deny the remand based on the consequences of his possible retribution. What language on page 185 are you saying negated his testimony that he used the Greek visa? What testimony specifically are you pointing to on page 185 of the record? Yes, so for he basically states the question was, I just specifically with the visa that is issued and your passport, are you able to live in Greece until 2018? What page are you on? Because I'm on page 185 of the AR. What page are you on? Okay, I don't have the AR number. This is page 85 of the transcript from the IJ. Let me get to that. Okay, I'm there. Okay, so the answer is, I could go in and out, but it's almost two years that I've not worked in Greece, and I cannot testify that I can hold this status. So that reinforces that he's lost the status, even though he did state before that he can go in and out until 2018. Well, before that, the question on line three, so if you were removed to Greece right now, you'd be able to live there until 2018. He says, I cannot live there because he'll find me there, not because his father said he would find me there. Yes, Your Honor, he stated that, but I do reinforce that he still states he doesn't hold that status. He also fears that Mr. Dyko would find him there. All right. Could you wrap up, counsel, please? Yes, Your Honor. Other than that, the opposing counsel also stated that when he went to Italy, he used his Greek papers to enter. The visa stamped in his passport. It wasn't ripped out of his passport by Greek authorities, so if he used that to enter a different country, unless there was a thorough review by Italian authorities, there's no way they could find out that the visa was revoked or the status had expired. And as for going to Greece three times, it's not fatal to the claim. He did secure or sell his car, as he testified, and to secure his family and take care of his property in Albania before he then eventually came to the United States. All right. Thank you, counsel. Thank you to both counsel. Thank you, Your Honor. The case just argued is submitted for decision by the court. The next case on calendar for argument is Zakarian v. Sessions.
judges: Schroeder, Rawlinson, Sessions